**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Duane Bryan Heward and Alysia Dawn Heward,<br><br>Plaintiffs,<br><br>v.<br><br>Ahmed Thahab,<br><br>Defendant. | No. CV-19-05155-PHX-DJH<br><br>**ORDER** |

Plaintiffs Bryan and Alysia Heward ("Plaintiffs") responded to Ahmed Thahab's ("Defendant") ad for a 2014 Chrysler Town & Country Mini Van ("the Van"). Plaintiffs paid the Defendant $7,500 for the Van. Plaintiffs allege that Defendant misrepresented the actual mileage of the Van in advertising and selling the Van to Plaintiffs resulting in their financial losses. Plaintiffs filed a Complaint alleging that Defendant violated the Federal Odometer Act (49 U.S.C. § 32701 *et seq.*) and the Arizona Consumer Fraud Act (A.R.S. § 44-1521 *et seq.*), and seeking damages for their resulting financial losses. (Doc. 1). Plaintiffs also allege that the Defendant acted with the intent to defraud when he altered the Van's odometer and provided them with a false odometer disclosure. (*Id.* at ¶¶ 47, 48). The parties proceeded to a bench trial on April 12, 2021. The Court now issues its ruling.[1]

**I.   FINDINGS OF FACT**

1. On February 5, 2019, a Certificate of Title was issued for the Van in the name of

---

[1] Defendant proceeded *pro se*, although during the pendency of the case he indicated that he would retain counsel, but never did. (*See* Docs. 15; 23).

Kevin Hooper of Dryden, Michigan noting 206,216 odometer miles. [Exh. 10];[2]

2. On February 27, 2019, the Defendant purchased the Van in Michigan for $2,000. [UT[3] at 8-10; Exh. 10];

3. A Title Assignment was issued by Kevin Hooper as Seller to Ahmed Thahab as Buyer. [UT at 8-10 ; Exh.10];

4. The Title Assignment notes the Van's mileage at 206,600. (Doc. 27-1) [UT at 10; Exh. 10];

5. The Defendant drove the Van from Michigan to Phoenix, Arizona, where he resides. [UT at 11];

6. The Defendant testified that he needed to rely on his Global Positioning System while driving the Van because the odometer did not work. [UT at 11-12];

7. The Defendant took the Van to a mechanic to have the odometer fixed, which reduced the odometer reading from 206,600 miles to 67,000 miles. [UT at 12];

8. On March 13, 2019, the Defendant signed an Arizona Motor Vehicle Division ("MVD") Title and Registration Application listing himself as the Van's owner and the Van's "actual" odometer reading as "206,600." (Doc. 27-1); [UT at 13-14; Exh. 9];

9. On March 13, 2019, the Defendant received an Arizona Department of Transportation Certificate of Title, which notes the Van's odometer reading as 206,600 and a notation "A." [UT at 14; Exh. 7];

10. On page 2 of the Transportation Certificate of Title, the Defendant wrote the Van had an odometer reading of 67,000, and he inserted an "X" next to "Not Actual Mileage Warning Odometer Discrepancy" and signed it. (Doc. 27-1); [UT 14-15; Exh. 7];

11. On April 5, 2019, the Defendant completed another Arizona MVD Title and Registration Application for the Van. [UT at 16-17; Exh. 6];

12. The Defendant's application notes an odometer reading of 67,000 and box "C' is

---

[2] "Exh" refers to the exhibit number as admitted at trial.
[3] "UT" refers to the uncertified transcript of trial testimony followed by page number.

checked. [UT at 16-17; Exh. 6];

13. The Defendant received an Arizona Certificate of Title on April 3, 2019, which he signed and had notarized on that same day, which is something he testified that he always does. [UT at 18; Exh. 4];

14. The Defendant left the odometer reading blank. [UT at 26; Exh. 4];

15. The Defendant acknowledged that the Certificate of Title requires the Seller to "state the vehicle mileage upon transfer of ownership." [UT at 28-29; Exh. 4];

16. The Defendant stated he was not sure of the Van's actual mileage and testified that the person he bought it from was also unsure of the actual mileage. [UT 19-20, 30];

17. The Defendant acknowledged that the mileage on a 2014 Van is a major factor in determining its value. [UT at 32];

18. The Defendant acknowledged that he would not pay the same price for a van with 206,000 as he would for one with 67,000 miles. [UT at 34]

19. The Defendant used the Van while employed as an Uber driver. [UT at 17];

20. Sometime in April, the Defendant decided to sell the Van, so he offered it for sale at over $8,000 on Craigslist. [UT at 18-21, 41; Exh. 13];

21. On June 17, 2019, Plaintiffs responded to the Craigslist advertisement by text message asking the Defendant about the Van's mileage to which the Defendant responded "75,000." [UT at 21, 41; Exh. 13];

22. The Defendant also represented to Plaintiffs that the Van had only 80,000 miles.[4] (Doc. 27-1);

23. In response to Plaintiff's[5] text message, the Defendant asked if Plaintiff was a dealership. [UT at 23; Exhs. 13 and 22];

24. Plaintiff also asked if the Defendant "flipped cars," to which the Defendant responded, "It's my dad's car and he want me to sell it for him." [UT at 25; Exh.13];

25. Plaintiff met with Defendant to see and to test drive the Van. While driving the Van,

---

[4] The Complaint alleges at time of sale that the Van had "80,000" in mileage but the trial evidence and testimony are that the Defendant advertised the Van as having 75,000 miles. (Doc. 1 at 5; ¶ 28).
[5] Hereafter "Plaintiff" refers to Duane Heward.

- 3 -

they had to stop to add antifreeze because the Van was overheating.  [UT at 42];

26. Plaintiff and Defendant drove the Van to a mechanic to enable Plaintiff to inspect its undercarriage, however, he was unable to fit underneath it, so he asked Defendant to take a picture of the undercarriage with his cell phone.  [UT at 44];

27. On June 25, 2019, Plaintiff accompanied the Defendant to the MVD and asked that a Title search be conducted to ensure the Defendant actually owned the Van, which the MVD confirmed.  [UT at 44 - 45]

28. The Defendant and Plaintiff then drove to Chase Bank where Plaintiff gave Defendant a cashier's check in the amount of $7,500, and Defendant gave Plaintiff the Title and one key fob. (Doc. 27-1); [UT at 44-45];

29. After Plaintiff received the Title from the Defendant, he completed it by writing in his and his wife's name. [UT at 46; Exh. 4];

30. Plaintiff returned home where he planned to register the Van with the Holbrook MVD.  [UT at 46-47];

31. A Holbrook MVD employee informed Plaintiff that his researched showed that the Van had over 200,000 odometer miles on it.  [UT at 47];

32. The MVD employee provided Plaintiff with a "Statement of Error" form instructing him to have the Defendant complete and notarize the form to enable the MVD to reinstate the Van's true mileage.  [UT at 47-49; Exh. 14];

33. Plaintiff filled in the form as much as he could, including inserting "C" under "Odometer Box Entered in Error," and "A" under "Correct Mileage." [UT at 47-49; Exh. 14];

34. Plaintiff  texted a picture of the Statement of Error form to the Defendant explaining that the MVD told him that the Van has over 200,000 miles on it.  [UT at 51];

35. Plaintiff understood that Defendant's father purchased the Van, so he asked Defendant to have his father complete the form with the correct mileage stating "whoever sold the car to your dad in Michigan accidently put on the title 206,000.  So your dad did the same when he came to Arizona.  Then when you and your dad

put the title in your name with the correct mileage, they put Box C. They marked C on my title because your title had C too. I need box A." [UT at 49, 51; Exh. 13];

36. Defendant responded: "What you mean over 200,000 I don't understand" and "I will ask my dad what's going on with the car." [UT at 31, 51-52; Exh. 13];

37. Plaintiff asked the Defendant to call him back, but the Defendant never did. [UT at 31-32, 52];

38. When Plaintiff attempted to reach the Defendant, he learned that Defendant had blocked his calls. [UT at 32, 52];

39. Plaintiff viewed a CarFax report that indicated the Van had 173,658 miles on May 3, 2018, and 200,929 miles on December 18, 2018. [UT at 53];

40. Plaintiff testified that he would never purchase a vehicle knowing that the odometer had been altered or rolled back. [UT at 37];

41. Plaintiff testified that over his lifetime, he has purchased approximately 12 used vehicles and he has never purchased one with over 100,000 miles. [UT at 38];

42. While driving the Van home to Holbrook, the air conditioner began to blow hot air. [UT at 55-56];

43. Plaintiff paid $580.00 to Wilkinson Auto Shop for labor to repair the air conditioning unit, and $331.09 for a hose line as part of that repair. [UT at 56-59; Exh. 16, 20];

44. Having never received the second key fob from Defendant, Plaintiffs purchased one for $20.77 and paid $100.00 to have the fob programmed. [UT at 55-56; Exhs. 18, 19];

45. Plaintiffs paid $204.72 to Title the Van. [UT at 55-56; Exh. 3];

46. Plaintiffs registered the Van and paid $221.53 for one year. [UT at 59; Exh. 17];

47. Plaintiff testified that, given what he learned about the Van after purchasing it, he would not have paid $1,000 for it. [UT at 60-61];

48. Plaintiff further testified that had he known that the Van had over 200,000 miles on it he would not have responded to the Defendant's ad. [UT at 61];

49. Plaintiff testified that the Defendant never informed him that he replaced the Van's odometer. [UT at 62].

## II. CONCLUSIONS OF LAW

Title 49 U.S.C. § 32710 provides that a person may bring a civil action to enforce a claimed violation of the federal Motor Vehicle Information and Cost Savings Act ("the Odometer Act"). The Act's intent is to "prohibit tampering with motor vehicle odometers; and to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers."[6] 49 U.S.C. § 32701(b). Among the prohibited acts are that a person may not disconnect, reset, alter, or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer. 49 U.S.C. § 32703(2). It also forbids advertising for sale, selling, using, installing, or having installed "a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer." *Id*.

Moreover, a person transferring ownership of a motor vehicle shall give the transferee[7] specific written disclosure. The written disclosure must be signed by the transferor and transferee, and among other statements must include "(1) the odometer reading at the time of transfer. . ." and "the transferor's certification that 'to the best of his knowledge the odometer reading reflects the actual mileage; (2) the odometer reading reflects the amount of mileage in excess of the designated mechanical odometer limit'; or (3) the odometer reading does not reflect the actual mileage, and should not be relied upon." *Shaghoian v. Aghajani*, 228 F. Supp. 2d 1107, 1111 (C.D. Cal. 2002) (quoting 49 C.F.R. § 580.5). A person who transfers ownership of a motor vehicle may not violate a regulation prescribed under the Odometer Act or give a false statement to the transferee in making the

---

[6] "Odometer means an instrument or system of components for measuring and recording the distance a motor vehicle is driven, but does not include an auxiliary instrument or system of components designed to be reset by the operator of the vehicle to record mileage trip." 49 U.S.C. § 32701(a)(1)-(4).
[7] "Transferee" is "any person to whom ownership of a motor vehicle is transferred, by purchase, gift, or any means other than by the creation of a security interest." *See* 49 C.F.R. § 580.3(2)(ii).

required disclosure. 49 U.S.C. § 32705.

The Odometer Act allows a civil action against "[a] person who violates this chapter . . . with intent to defraud[.]" 49 U.S.C. § 32710; *see also Bodine v. Graco, Inc.*, 533 F.3d 1145 (9th Cir. 2008).[8] "A transferor of a vehicle may be found to have intended to defraud if he had reason to know the mileage on the vehicle was more than was reflected by the odometer or certification of the previous owner and nevertheless failed to take reasonable steps to determine the actual mileage." *Haynes v. Manning*, 917 F.2d 450, 453 (10th Cir. 1990); s*ee also Rogers Motors of Herminston LLC. v. Bartlett LLC.*, 2018 WL 616138, at *3 (E.D.Wa. Jan. 29, 2018). An intent to defraud can be inferred "where the seller exhibited gross negligence or a reckless disregard for the truth in preparing odometer disclosure statements." *Tusa v. Omaha Auto Auction Inc*., 712 F.2d 1248, 1253 (8th Cir. 1983). A plaintiff must prove the intent to defraud by a preponderance of the evidence. *Landrum v. T.C. Goddard*, 921 F.2d 61, 62–63 (5th Cir. 1991).

**A. The Odometer Act**

As an initial matter, the Court finds Plaintiff Duane Heward credible.[9] The Court finds some of the Defendant's trial testimony credible. That is, he truthfully testified when faced with the admitted evidence. Yet his credibility suffered when his testimony contradicted that evidence and his own statements. Plaintiffs have shown, by a preponderance of the evidence, that the Defendant violated the Odometer Act by tampering with the Van's odometer, by failing to disclose the actual mileage of the Van when he offered it for sale, and by failing to make the disclosures related to the Van's mileage as required by the Odometer Act.

The trial evidence and testimony show that the Defendant purposely embarked on a series of acts designed to profit from the sale of a Van with a false odometer reading. That is, he actually and substantially tampered with the Van's odometer reading to enhance its sale price. The Defendant understood the Van's relative value based on his own purchase

---

[8] The Act also provides a criminal penalty for "[a] person that knowingly and willfully violates this chapter or a regulation prescribed . . . under this chapter." 42 U.S.C. § 32709(b).
[9] Plaintiff, Alysia Heward, appeared at trial but did not testify.

of it. On February 27, 2019, the Defendant purchased the 2014 Van from Kevin Hooper for $2,000. Exh 10. At that time, the Van had an odometer reading of 206,600 miles. *Id.* The Defendant readily admits that he drove the Van to Phoenix where he had the odometer reduced to 67,000 miles. UT at 11-12.

Next, the Court concludes that the Defendant attempted to hide the Van's actual mileage by applying for multiple Certificates of Title. UT at 13-18; Exhs. 4, 6 & 7. First, on March 13, 2009, the Defendant applied for an Arizona MVD Title and Registration listing himself as the Van's owner and noting that the Van had an odometer reading of 206,600 actual miles. Exh. 9. On that day, the Defendant received a Certificate of Title noting the same odometer reading on the front page, but on the back page the Defendant wrote the Van's odometer read 67,000, and he inserted an "X" next to "Not Actual Mileage Warning Odometer Discrepancy." Exh. 7. Second, for some unstated reason, on April 5, 2019, the Defendant completed another Arizona MVD Title and Registration Application for the Van, and on that application he noted 67,000 odometer miles and checked box "C."[10] Exh. 6. On that day, the Defendant received a Certificate of Title, signed it, but left the odometer reading blank. *Id*. The Court easily concludes that the Defendant's acts of obtaining two Titles for the same Van were in an effort to disguise its actual mileage as known to him.

Then, in April, the Defendant offered the Van for sale on Craigslist. Plaintiffs responded to the Defendant's advertisement asking him for the Van's mileage. Defendant responded "75,000." Exh. 13. The Defendant asked Plaintiff if he was a dealer, and Plaintiff asked Defendant if he flipped cars. The Defendant stated that he did not and that he was selling the Van for his father. *Id*. Three days later, after test driving the Van, Plaintiffs purchased it with a cashier's check for $7,500. (Doc. 27-1); UT at 44-45. The Defendant transferred the second Certificate of Title, without filling in its odometer miles, to Plaintiffs on that day. Exh. 4.

…

---

[10] The Defendant left the box next to "Actual" blank.

- 8 -

### 1. Failure to Disclose

The Court must determine whether the Defendant violated the Odometer Act by failing to disclose or giving false statements related to the Van's actual mileage, and whether he did so with intent to defraud Plaintiffs. The trial testimony and evidence show by clear and convincing evidence that the Defendant failed to disclose the Van's actual odometer reading, and that he intentionally reduced the original odometer reading because he intended to sell the Van to Plaintiffs at an inflated price. Although the Defendant met with and communicated with Plaintiffs multiple times, he never disclosed what he knew about the Van's mileage history – that he bought the Van with an odometer reading of 206,000 miles, and that he reduced the mileage to 67,000. Furthermore, upon receiving Plaintiffs' $7,500 cashier's check, the Defendant provided him the second Title with a blank odometer reading. Exh. 4. At trial, though unconvincingly feigning an ability to read it, the Defendant acknowledged that the Title included a statement that the seller "state the vehicle milage upon transfer of ownership." UT at 28-29; Exh. 4. Yet Defendant failed to do so. Instead, he tried to hide the historic mileage by re-applying for a second Title that included the reduced odometer reading. He used that second Title in selling the Van to Plaintiffs. The record amply reflects that the Defendant failed to provide Plaintiffs with the required written disclosures and that his acts were knowing and intentional. *See* 49 C.F.R. § 580.5.

### 2. Intent to Defraud

Defendant's text conversations with Plaintiff show that he acted surprised when told that the Holbrook DMV reported the Van's mileage was 206,000. He proclaimed, "what you mean over 200,000 I don't understand." Exh. 13. The trial evidence substantially shows that the Defendant knew the Van had in excess of 200,000 miles, but he continued to hide that fact. Moreover, Defendant sold Plaintiffs the Van at over $5000 more than he paid for it just four months prior. The Court easily concludes that the Defendant's acts were intended to defraud the Plaintiffs into purchasing what they believed to be a 2014 Van with 67,000 miles.

Ironically, Plaintiff's testimony showed that all he sought from the Defendant was a corrected title to reflect what he was told was the Van's actual odometer reading. Plaintiffs believed, up to that point, that the Defendant, the MVD, or original seller had mistakenly filled out the wrong odometer mileage designation. Exh. 13 ("Whoever sold the car to your dad in Michigan accidently put on the title 206,000 miles. So your dad did the same when he came to Arizona. Then when you and your dad put the title in your name with the correct mileage, they put Box C."). The Defendant's conduct of cutting off Plaintiffs communication evidences a guilty conscience. UT at 32, 52. Indeed, only after Plaintiff's communication was cut off, did he realize that he had been defrauded. The Court finds that Defendant's acts were intentional and in extreme reckless disregard of the Odometer Act and its regulations.

### B. The Arizona Consumer Fraud Act

Plaintiffs also bring claims against the Defendant for violating the Arizona Consumer Fraud Act. "The Arizona Consumer Fraud Act ('ACFA') is a broadly drafted remedial provision designed to eliminate unlawful practices in merchant-transactions." *State ex rel. Woods v. Hameroff*, 884 P.2d 266, 268 (Ariz. Ct. App. 1994). "Generally stated, claims under the ACFA, like common law fraud claims, can be based on affirmative misrepresentations, concealment, or omission of material facts." *Tavilla v. Cephalon, Inc.*, 870 F. Supp. 2d 759, 776 (D. Ariz. 2012). An affirmative "misrepresentation causes injury where the consumer actually relies on" the statement, although the consumer's reliance does not need to be justifiable. *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 825–26 (D. Ariz. 2016). An omission is actionable under the ACFA if it "is material and 'made with intent that a consumer rely thereon.'" *Id.* at 830 (quoting *State ex rel. Horne v. AutoZone, Inc.*, 275 P.3d 1278, 1281 (2012)); *In re Ariz. Theranos, Inc., Litig.*, 308 F. Supp. 3d 1026, 1040 (D. Ariz. 2018).

Arizona courts construe the ACFA to provide a right of action to any person damaged by its violation. *Sellinger v. Freeway Mobile Home Sales, Inc*., 521 P.2d 1119, 1122 (Ariz. 1974). To prevail, a plaintiff must establish that (1) the defendant made a

misrepresentation in violation of the Act, and (2) defendant's conduct proximately caused plaintiff to suffer damages. *Parks v. Macro–Dynamics, Inc.*, 591 P.2d 1005, 1008 (Ariz. Ct. App. 1979). Moreover, a plaintiff must show "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. Ct. App. 1978).

The facts adduced at trial satisfy the elements necessary to find that the Defendant violated the ACFA. Through the sales transaction, he engaged in deception and misrepresentation. Plaintiffs relied on Defendant's misrepresentations and omissions, resulting in their financial injury. The "representation" may be an affirmative representation or an omission of fact that the defendant had a duty to disclose. *In re Arizona Theranos, Inc., Litig.*, 308 F. Supp. 3d at 1040. Plaintiffs have, therefore, satisfied their burden of proof. *See Palmer v. Web Indus. Inc*., 2007 WL 45927, at *6 (D. Ariz. Jan. 8, 2007) ("Plaintiff has the burden of proving the elements of a consumer fraud claim by a preponderance of the evidence."). As with the Odometer Act violation claims, Plaintiffs have met their burden of proof.

### C. Damages

Plaintiffs claim that as a result of Defendant's actions, they have suffered actual damages, including loss of value of the vehicle and other expenses. (Doc. 1 at 6). Plaintiffs' Complaint assert that their actual damages are no less than $7,500. *Id*. at 7. Indeed, the Odometer Act provides that a plaintiff is entitled to recover three times the amount of his or her actual damages, or $10,000, whichever is greater. 49 U.S.C. § 32710(a). Prevailing plaintiffs are also entitled to recover reasonable attorney's fees and costs. *Id*. Punitive damages are available under the ACFA. *See Sellinger v. Freeway Mobile Home Sales, Inc.*, 521 P.2d 1119, 1123 (1974); *Howell v. Midway Holdings, Inc.*, 362 F. Supp. 2d 1158, 1165 (D. Ariz. 2005). "To obtain punitive damages, a plaintiff must

prove that defendant's evil hand was guided by an evil mind." *Volz v. The Coleman Co., Inc.*, 748 P.2d 1191, 1194 (Ariz. 1987) (internal citation omitted). Plaintiffs must do so by clear and convincing evidence. *Thompson v. Better–Bilt Aluminum Products, Co., Inc.*, 832 P.2d 203, 209 (Ariz. 1992). The requisite evil mind may be established in two ways: 1) defendant "intended to injure the plaintiff," or 2) defendant "consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Gurule v. Ill. Mut. Life and Cas. Co.*, 734 P.2d 85, 87 (Ariz. 1987). "The existence of factors constituting an evil mind can be inferred from the evidence, including proof of defendant's conscious and deliberate disregard of the interests of others." *Palmer*, 2007 WL 45927, at *8.

Plaintiffs put forth evidence of $911.09 in monetary damages resulting from necessary repairs to the Van. Exhs. 16 & 20. They also paid $120.77 for a new key fob and programming. Exhs. 18 & 19. Plaintiffs also paid $204.72 to title the Van and paid the mandatory one-year $221.53 registration fee. Exhs. 3 & 17. The Court, however, does not find these cost compensable here because they are a necessary for Plaintiffs continued use of the Van.[11] Plaintiff further testified that, based on his history of buying used vehicles, he would not pay more than $1,000 for a van with 206,000 miles. Plaintiffs did not submit evidence of the Van's current value or its value at the time of purchase. However, the evidence and testimony show that the Defendant paid $2,000 for the Van. He then sold it to Plaintiffs for $7,500, resulting in a $5,500 profit. Therefore, the Court finds the reasonable value of the Van when Plaintiffs purchased it to be $1,000 based upon the Defendant's tampering of its odometer and his use of it between February and April. Therefore, $6,531.86 are Plaintiff's proven costs resulting from the Defendant's violation of the Odometer Act and ACFA. Under the Federal Odometer Act, this amount is to be trebled for total damages of $19,595.58. The Court finds that treble damages are sufficiently punitive to satisfy the ACFA.

Plaintiffs allege that in violating the ACFA, the Defendant "knowingly acted with

---

[11] Plaintiffs appear to have retained the Van.

an evil mind, intending to economically injure Plaintiffs, or continuously disregarded the substantial risk that [his] [sic] conduct would cause significant economic harm to Plaintiffs." (Doc. 1 at ¶ 58). Plaintiffs met their burden of proof that the Defendant's acts were intentional and that he consciously pursued a course of conduct knowing it would cause significant harm them. For example, Defendant, up through trial, claimed that his father purchased the Van, and that he was selling it for him. The Defendant testified that his father, Tamir, who resides in Michigan, purchased the Van from a friend for about $4,000 or $5,000. UT at 8. Yet, there is no evidence the Defendant's father did so. Rather, the evidence shows the Defendant purchased the Van from Kevin Hooper for $2,000. *Id*. at 9-10; Exh. 10.

When Plaintiff disclosed the Holbrook MVDs discovery of the Van's actual mileage, the Defendant continued his farse by responding "[w]hat you mean over 200,000 I don't understand . . . I will ask my dad what's going on with the car." UT at 51-52; Exh. 13. Then, the Defendant blocked Plaintiff's cell phone evidently to cut off contact with the Plaintiffs. It is obvious to the Court that the Defendant intended to defraud the Plaintiffs, and when caught, he was not going to take personal responsibility. He had accomplished his goal of scamming Plaintiffs into an unwitting purchase of a well-worn vehicle at an inflated price. This is precise the type of conduct that the Odometer Act and the ACFA seek to prevent. Accordingly,

**IT IS ORDERED** judgment shall be entered in favor of Plaintiffs on their Odometer Act Violation claim and their Arizona Consumer Fraud Act Claim (Doc. 1);

**IT IS FURTHER ORDERED** that Plaintiffs are awarded $19,595.58 in combined actual and punitive damages.

**IT IS FINALLY ORDERED** that Plaintiff's counsel shall file with the Court a Motion for Attorney's Costs and Fees within 14 days of the date of this Order.

Dated this 13th day of May, 2021.

Honorable Diane J. Humetewa
United States District Judge