Floyd W. Bybee, #012651
**BYBEE LAW CENTER, PLC**
90 S. Kyrene Rd., Ste. 5
Chandler, AZ 85226-4687
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Duane Bryan Heward, *et al.,* )<br><br>     Plaintiffs, )<br><br>v. )<br><br>Ahmed Thahab, )<br><br>     Defendant. ) | No. CV 19-5155-PHX-DJH<br><br>**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY'S FEES** |

## I.    Introduction.

Plaintiffs, Duane Bryan Heward and Alysia Dawn Heward (hereafter "Hewards" or "Plaintiffs"), by and through counsel, respectfully move for an award of reasonable attorney's fees in the amount of $21,422.50, representing 45.1 hours of attorney time at $475 per hour, which were necessarily incurred in the prosecution of this case. Plaintiffs' Motion is supported by the following Memorandum of Points and Authorities, the Declaration of Floyd W. Bybee (Exhibit 1); the Declaration of Richard N. Groves (Exhibit 2); a Statement of Consultation as required by Local Rule 54.2(d)(1) (Exhibit 3); and copy of the fee agreement between Plaintiffs and counsel (Exhibit 4).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**MEMORANDUM OF POINTS AND AUTHORITIES**

**IN SUPPORT OF MOTION FOR ATTORNEY'S FEES**

**II.     Local Rule 54.2 Factors.**

**(1)     Eligibility.**

On September 12, 2019 Plaintiffs filed this suit against Defendant Ahmed Thahab (hereafter "Thahab" or "Defendant") alleging violations of the federal Motor Vehicle Information and Costs Savings Act, also known as the federal Odometer Act, 49 U.S.C. § 32701, et seq. (hereinafter "Odometer Act" or "Act"), and the Arizona Consumer Fraud Act, A.R.S. § 44-1521 *et seq.* (hereinafter "ACFA"). The claims arose from Defendant's sale of a used 2014 Chrysler Van to Plaintiffs with the representation that the Van had only 75,000 or 80,000 miles, when in fact Defendant had purchased the Van with over 206,000 miles recorded on the title. After unsuccessful efforts to settle, the matter was tried to the Court on April 12, 2021. After taking the matter under advisement, on May 14, 2021, the Court issued an Order outlining its findings of fact, and conclusions of law, ultimately finding in favor of Plaintiffs and against Defendant. (Dkt. #38) The Court awarded Plaintiffs damages of $19,595.58, and a judgment was entered accordingly. (Dkt. #39)

Plaintiffs succeeded and prevailed on all claims against Defendant, and were awarded actual damages, statutory damages under the Odometer Act, and punitive damages under the ACFA. In the Order, the Court also directed Plaintiffs counsel to file the present motion for attorney's fees and costs.

**(2)     Entitlement.**

The Odometer Act specifies that "[t]he court shall award costs and

1   a reasonable attorney's fee to the person when a judgment is entered for

2   that person." 49 U.S.C. § 32710(b). The award of attorney's fees to a

3   successful plaintiff is mandatory under the Act. *See Duval v. Midwest*

4   *Auto City Inc.*, 578 F.2d 721 (8th Cir. 1978); *Hall v. Riverside Lincoln*

5   *Mercury-Sales*, 499 N.E.2d 156, 161 (Ill. App. Ct. 1986 (mandatory

6   attorney's fees a necessary part of the Federal Act). The Act does not

7   specify what "reasonable" means, however, it is likely that courts will

8   turn to other federal fee-shifting standards announced in cases under

9   other consumer statutes or civil rights cases.

10          The Odometer Act's legislative history implies that judges should

11   adequately compensate attorneys so that they will litigate odometer

12   cases and help promote the Act's consumer protection purposes. The

13   prosecution of an odometer violation can be very difficult, nearly always

14   involving proof of the defendant's intent. Moreover, private attorneys

15   may be skeptical of these cases because an award which would ade-

16   quately compensate an attorney for her services might greatly exceed

17   the average damage recovery for the violation. *See Farmers Coop. Co. v.*

18   *Senske & Son Transfer Co.*, 572 F.3d 492 (8th Cir. 2009) (over $100,000

19   in attorney fees, including a 10% upwards adjustment on the lodestar,

20   when actual damages were a little over $42,000); *Fleet Inv. Co. v. Rogers*,

21   620 F.2d 792 (10th Cir. 1980); *Evans v. Paradise Motors, Inc.*, 788 F.

22   Supp. 1079 (N.D. Cal. 1991); *Williams v. Fin. Plaza, Inc.*, 2002 Mo. App.

23   LEXIS 883 (Mo. Ct. App. Apr. 30, 2002).

24

25

26

1    In calling for a national policy against odometer tampering,[1]

2    Congress clearly articulated its intent to encourage attorneys to prose-

3    cute these cases by providing reasonable attorney fees for successful

4    actions, even if the actual damage recovery is relatively small. *See*

5    *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226 (1st Cir. 1980)

6    ($3,000 attorney fee award vacated for determination why $17,000

7    request was rejected); *Fleet Inv. Co. v. Rogers*, *supra*; *Duval v. Midwest*

8    *Auto City, Inc.*, *Supra*; *Evans v. Paradise Motors, Inc.*, *supra; Gonzales v.*

9    *Van's Chevrolet, Inc.*, 498 F. Supp. 1102 (D. Del. 1980) ($9,000 attorney

10   fee).

11   "The value of an attorney's services is not only measured by the

12   amount of the recovery to the plaintiff, but also the non-monetary

13   benefit accruing to others, in this case the public at large from his

14   successful vindication of a national policy to protect consumers from

15   fraud in the used car business." *Fleet Inv. Co. v. Rogers*, *supra*.

16   Thus, as a result of Plaintiffs' completely successful action under

17   the federal Odometer Act, Plaintiffs are entitled to an award of reason-

18   able attorney's fees for the time necessarily and reasonably expended.

19   **(3)    Reasonableness of Requested Award.**

20   Plaintiffs seek an award of attorney's fees in the amount of

21   $21,422.50, representing 45.1 hours of attorney time at $475 per hour.

22   As set forth herein, and in counsel's declaration, paragraphs 7 - 11, the

23

24   [1] The Senate Report states: "Finally, there is a need to adopt a national policy against odometer tampering. Some 17 states presently

25   have legislation prohibiting persons from tampering with odometers. A national policy against such practices is needed." S. Rep. No. 92-413

26   (1971), reprinted in 1972 U.S.C.C.A.N. 3960, 3964.

1   amount of fees requested are reasonable and were necessarily incurred
2   in the prosecution of this case.

3       *(A)  Time and labor required of counsel.*

4       An odometer fraud case is unique and unlike the typical personal
5   injury case. The Act requires plaintiffs to not only show a violation of
6   prohibited conduct, but also requires plaintiffs to prove the defendant's
7   fraudulent intent. 49 U.S.C. §§ 32710(a), 32709(d)(1)(B). *See* also *Hill v.*
8   *Bergeron Plymouth Chrysler*, 456 F. Supp. 417 (E.D. La. 1978). In
9   addition, because defendants in these actions have committed some
10  level of fraud, they also tend to hide and conceal evidence of their
11  actions which then have to be uncovered by plaintiff and counsel in
12  order to prevail in the case. Defendants refuse to produce any documen-
13  tation which might show liability, and they almost always hide their
14  fraudulent acts claiming innocence. Plaintiffs and counsel are thus
15  required to uncover supporting documents and other proof which
16  necessarily come from third parties in order to support their claims and
17  the intent to defraud.

18      In the present case, Defendant allowed the case to progress to trial
19  all the while continuing to deny any liability, and making claims of
20  ignorance and innocence for his actions. Settlement was continually
21  broached by Plaintiffs throughout the litigation, but Defendant simply
22  denied any liability and would not offer anything. The parties even
23  participated in a settlement conference with Magistrate Judge Bibles.
24  However, the conference was cut short, when caucusing with Defendant,
25  Defendant told Judge Bibles that was going to hire counsel. He never
26  hired counsel.

1   During the litigation, Defendant provided no documentation or

2   evidence related to his acquisition of the subject vehicle, or the sale of

3   the vehicle to Plaintiffs. Moreover, Defendant provided no documenta-

4   tion or evidence to support his claimed defenses.

5   Plaintiffs submit that the time expended in the prosecution of this

6   action is modest due to counsel's experience in odometer fraud litiga-

7   tion, and in spite of the obstinate position taken by Defendant. Cases

8   such as this, in which monetary damages are relatively small, still assist

9   other consumers because the parties involved in the sale of automobiles

10   are motivated to change their practices and procedures to assure

11   compliance with the Odometer Act. Defendant should not be encouraged

12   to cause Plaintiffs or others to unnecessarily expend resources by

13   escaping liability for fees and costs associated with the prosecution of

14   this case.

15   ***(B)  Novelty and difficulty of the questions presented.***

16   As outlined above, Odometer Fraud cases are unique and require

17   a continual effort by counsel to discover and uncover documentation

18   and facts in order to support not only proof of the violation, but that the

19   violation was committed by Defendant with the intent to defraud Plain-

20   tiffs. Most lawyers choose not to take on the task of learning the statute

21   and the case law, and risk proof of a violation but without the necessary

22   element of intent to defraud. The Odometer Act is not a strict liability

23   statute, or even one where the proof is simply negligence. The require-

24   ment to prove intent to defraud makes these cases much more difficult

25   to reach a successful conclusion.

26

1

***(C)  Skill requisite to perform the legal service properly.***

2

Because Odometer Fraud cases are frequently against small

3  dealerships, or individuals selling dozens of cars off the on-line ads, the

4  documentation normally found in a large established dealership is not

5  available. A lawyer handling these cases must know how and where to

6  find the documentation to support the violation, and to prove the ele-

7  ment of an intent to defraud. Thus, there is a skill and a specific level of

8  commitment that is required to perform the legal service in these cases.

9

***(D)  Preclusion of other employment by counsel.***

10

The time spent on this case was not, and could not be, spent at

11  the same time on any other case. Counsel purposefully limits his prac-

12  tice to consumer law in order to help ordinary individuals who need the

13  remedies of the Act as provided by Congress.

14

***(E)  Customary fee charged in matters of the type involved.***

15

The customary fee charged in matters of this type is in line with

16  Plaintiffs' requested rate. The declaration of practicing Arizona con-

17  sumer attorney Richard Groves confirms that Plaintiffs' rate of $475 per

18  hour is a reasonable rate regularly charged in this District for consumer

19  protection litigation for an attorney of Plaintiffs' counsel experience.

20

As set forth in counsel's declaration, contemporaneously filed

21  herewith, hourly rates between $400 and $425 per hour have been

22  approved by judges in this District for counsel's work, going back to

23  early 2017. *See* ¶ 4; Decl. of Bybee. In June 2019, Plaintiffs' counsel

24  modestly increased his hourly rate to $475 per hour for new consumer

25  protection litigation matters such as odometer fraud.

26

Counsel has completely focused his practice since 1994 on pursu-

ing consumer protection claims on behalf of Arizona consumers. Pursu-
ant to a Report and Recommendation issued by Magistrate Judge
Deborah M. Fine, the Honorable G. Murray Snow entered an order on
April 26, 2017 awarding counsel attorney's fees at the rate of $400 per
hour in the odometer fraud case of *Baeza v. Compadres Auto Sales, LLC*,
CV16-1903-PHX-DMF. Sixteen months later, in August 2018, the
Honorable John J. Tuchi awarded counsel attorney's fees as requested
at the hourly rate $425 in the odometer fraud case of *Thompson v. Qal
Dalmi Auto Sale LLC, et al.*, CV18-0478-PHX-JJT (Aug. 1, 2018) The
same month, the Honorable Susan R. Bolton also awarded Plaintiffs'
counsel full attorney's fees at the requested hourly rate of $425 in the
odometer fraud case of *Aguayo v. Transtyle, Inc., et al.*, CV 18-1174-PHX-
SRB (Aug. 29, 2018). The Honorable David G. Campbell awarded coun-
sel all attorney's fees requested at the rate of $425 per hour in October
2018 in the odometer fraud case of *King v. Union Leasing, Inc., et al.*,
CV17-3281-PHX-DGC. Judge Dominic W. Lanza found counsel's re-
quested hourly rate of $425 to be reasonable and awarded full attorney's
fees in the odometer act case of *Braunlich v. Arizona Road Trip Auto LLC,
et al.*. CV 19-5906-PHX-DWL (August 21, 2020). And, most recently, in
March 2021, the Honorable Stephen M. McNamee awarded counsel his
full attorney's fees as requested at the hourly rate of $425 per hour in
the odometer fraud case of *Elasfia v. Lara, et al.*, CV20-1666-PHX-SMM-
CDB, March 3, 2021)

### (F)  *Whether the fee is fixed or contingent.*

In Consumer Credit Protection Act cases, the attorney's fee is
nearly always contingent – not based on the amount of damages, but on

receiving an award by the court or by agreement of opponent. In these private attorney general cases, Congress has repeatedly encouraged counsel to bring suit, recognizing that counsel cannot charge the client an hourly fee, because the fee may be out of proportion to the recovery, or out of reach of the consumer's ability to pay.

"A contingent fee must be higher than the fee for the same legal services as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders, but also for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of a conventional loan." Posner, Economic Analysis of Law, 534, 567 (4th ed. 1992).

If contingent, the fee award should compensate counsel for the risk of receiving no compensation, *Blum v. Stenson*, 465 U.S. 886, 903 (1983), and to permit counsel "to earn an income that would be competitive with colleagues who get paid win or lose." *Bayless v. Irv Leopold Imports, Inc.,* 659 F. Supp. 942 (D.Or. 1987) (odometer case).

### *(G)  Time limitations imposed by the client or the circumstances.*

None.

### *(H)  Amount of money, or value of the rights involved, and results obtained.*

"[C]ourts generally will not look to the size of the damage award in determining a reasonable attorney's fee in consumer cases." *Smith v. Chapman*, 436 F. Supp. 58, 66 (W.D. Tex. 1977). However, the results in this case are significant for these Plaintiffs. Plaintiffs received a total

1   damage award of $19,595.58, including actual damages and punitive

2   damages under the Odometer Act, and the ACFA.

3       The courts have regularly rejected the "proportionality" argument

4   as the basis for a fee award. *See Lunday v. City of Albany*, 42 F.3d 131,

5   134 (2d Cir. 1994); *DiFilippo*, 759 F.2d 231, 234 (2nd Cir. 1985). Indeed,

6   fee awards in civil rights and consumer protection matters regularly

7   exceed the plaintiffs' recovery. *See City of Riverside v. Rivera*, 477 U.S.

8   561, 580 (1986) (awarding $245,450 fees on a $33,350 recovery, includ-

9   ing 143 hours for trial preparation); *Grant v. Martinez*, 973 F.2d 96, 101

10   (2d Cir. 1992) (fee award of $500,000 on $60,000 settlement); *United

11   States Football League v. National Football League*, 887 F.2d 408, 413-15

12   (2d Cir. 1989) ($5.5 million fee award on $3.00 recovery); *Chambless v.

13   Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1057-60 (2nd Cir.

14   1989) ($415,000 fee for recovering $2,689.02 monthly pension). "[F]or

15   Congress's private attorney general approach to succeed in the context

16   of [consumer protection] cases, attorney fees must not hinge on a

17   percentage of actual damages awarded." *St. Bernard v. State Collection

18   Service, Inc.*, 2010 WL 2743327 p. 2 (D.Ariz.); *see* also *Camacho v.

19   Bridgeport Fin.*, 523 F.3d 973, 981 (9th Cir.2008); and *Reck v. FCA US

20   LLC*, 2021 Cal. App. LEXIS 438, 18-19; 2021 WL 2070540 (Cal. Appl.

21   May 24, 2021) (it is an error of law for the trial court to reduce or deny

22   an award of attorney fees in a civil rights or public interest case on the

23   basis of a plaintiff's rejection of an offer of judgment when the ultimate

24   recovery has exceeded the rejected offer.)

25       ***(I) Experience, reputation and ability of counsel.***

26       Submitted herewith are the declarations of Plaintiffs' counsel, and

1    of one other Arizona consumer lawyer concerning counsel's experience,

2    abilities, and the reasonableness of his rate. In short, Mr. Bybee has

3    been in practice for over 31 years, has limited his practice to consumer

4    protection matters, including taking on many difficult cases against the

5    most experienced and capable attorneys.

6         *(J)  "Undesirability" of the case.*

7         Consumer protection cases, including Odometer Act claims, are

8    brought in the public interest by private attorneys general, but are

9    particularly undesirable to lawyers for many reasons. First, they are

10   often labor-intensive to obtain the requisite proof to win the case. The

11   results are uncertain so taking such cases imposes risks upon the

12   practitioner. It becomes difficult for consumers to vindicate their rights

13   under consumer protection statutes especially where smaller amounts

14   of money are involved.

15        Counsel's compensation is both contingent upon success of the

16   action, and is deferred until after the end of the case – when (and if) it is

17   collected from the defendant. For these reasons, consumer protection

18   cases are not, for the most part, attractive cases to most legal practitio-

19   ners. The vast majority of attorneys simply will not take these cases.

20        *(K)  Nature and Professional relationship with Client*.

21        Often, where an attorney has a lengthy and repeated professional

22   relationship with a client, the client negotiates a "volume discount" for

23   legal services. Not so here. This is the first and only matter for which

24   Plaintiffs have hired counsel. In nearly all consumer protection cases,

25   consumer Plaintiffs are not "repeat" or "volume" clients, as representa-

26   tion is limited to consumer protection claims only.

1     **(L)  *Awards in similar actions.***

2         Between 2017 and 2021, counsel has received attorney's fee

3 awards in the District of Arizona ranging from $400 per hour, to $425

4 per hour. In this case, counsel is requesting attorney's fees at the rate of

5 $475 per hour. This has been counsel's standard hourly rate for con-

6 sumer protection litigation with new cases starting in June 2019.

7         In April 2017, the Honorable G. Murray Snow confirmed two

8 Reports and Recommendations orders awarding counsel attorney's fees

9 at the rate of $400 per hour in the cases of *Burr v. National Credit*

10 *Adjusters LLC*, CV16-1139-PHX-DKD (FDCPA matter May 1, 2017)

11 (report and recommendation issued by Magistrate Judge David K.

12 Duncan), and *Baeza v. Compadres Auto Sales, LLC*, CV16-1903-PHX-

13 DMF (Odometer Fraud matter, April 26, 2017) (report and recommenda-

14 tion issued by Magistrate Judge Deborah M. Fine).

15         In November 2017, the Honorable John J. Tuchi found the hourly

16 rate of $400 per hour was 'representative of the Phoenix market in the

17 FDCPA practice' in the case of *Vargas v. National Credit Systems Incorpo-*

18 *rated*, CV-17-00415-PHX-JJT (FDCPA matter, November 8, 2017).

19         In August 2018, the Honorable John J. Tuchi again awarded all

20 attorney's fees at the requested of $425 per hour in the odometer fraud

21 case of *Thompson v. Qal Dalmi Auto Sale LLC, et al.*, CV18-0478-PHX-JJT

22 (Aug. 1, 2018)

23         In August 2018, the Honorable Susan R. Bolton awarded plaintiff's

24 full attorney's fees at the requested hourly rate of $425 in the odometer

25 fraud case of *Aguayo v. Transtyle, Inc., et al.*, CV 18-1174-PHX-SRB

26 (Aug. 29, 2018).

1    In October 2018, the Honorable David G. Campbell awarded all

2    attorney's fees requested at the rate of $425 per hour (Dkt. #91) in the

3    odometer fraud case of *King v. Union Leasing, Inc., et al.*, CV17-3281-

4    PHX-DGC.

5    In August 2020, in the federal odometer act case of *Braunlich v.*

6    *Arizona Road Trip Auto LLC, et al.*, the Honorable Dominic W. Lanza

7    found counsel's requested hourly rate of $425 to be reasonable and

8    awarded full attorney's fees. (CV 19-5906-PHX-DWL, August 21, 2020)

9    In March 2021, the Honorable Stephen M. McNamee awarded full

10   attorney's fees requested at the hourly rate of $425 per hour (Dkt. #33)

11   in the odometer fraud case of *Elasfia v. Lara, et al.*, CV20-1666-PHX-

12   SMM-CDB, March 3, 2021)

13   ***(M)  Other matters deemed appropriate under the***

14   ***circumstances.***

15           Congress enacted fee-shifting statutes to compen-
         sate "private attorneys general" and thereby to
16       encourage private enforcement of civil rights stat-
         utes, to the benefit of the public as a whole. *See*
17       H.R. Rep. No. 94-1558, at 2 (1976) (citing *Newm-*
         *an v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402,
18       19 L. Ed. 2d 1263, 88 S. Ct. 964 (1968) (per
         curiam)); *see* generally S. Rep. No. 94-1011
19       (1976). The public interest in private civil rights
         enforcement is not limited to those cases that
20       push the legal envelope; it is perhaps most mean-
         ingfully served by the day-to-day private enforce-
21       ment of these rights, which secures compliance
         and deters future violations. Congress meant
22       reasonable attorney's fees to be available to the
         private attorneys general who enforce the law, see
23       generally S. Rep. No. 94-1011, not only to those
         whose cases make new law.

24

25   *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999).

26           Attorney's fees are central to the enforcement of these consumer

1   protection statutes by private attorneys general. "The value of an attor-

2   ney's services is not only measured by the amount of the recovery to the

3   Plaintiffs, but also the non-monetary benefit accruing to others, in this

4   case the public at large from this successful vindication of a national

5   policy to protect consumers from odometer fraud." *See  Tolentino*, 46

6   F.3d at 652 (Plaintiffs "seek[ ] to vindicate important ... rights that

7   cannot be valued solely in monetary terms ... and congress has deter-

8   mined that the public as a whole has an interest in the vindication of

9   statutory rights."Quoting *City of Riverside v. Rivera*, 477 U.S. 561, 106

10  S.Ct. 2686, 91 L.Ed.2d 466 (1986)).

11      Such fees are particularly important in consumer cases under the

12  principles discussed by the Supreme Court in City of *Riverside v. Rivera*,

13  *supra*, a civil rights case. Consumer protection cases also support this

14  proposition. *See*, e.g., *Ratner v. Chemical Bank*, 54 F.R.D. 412 (S.D.N.Y.

15  1972) ($20,000 fees, $100 damages).

16      A defendant should not be encouraged to litigate in the expectation

17  that the Court will reduce the Plaintiffs' fee request, even though the

18  defendant's fees to its own attorney are not similarly scrutinized and

19  reduced by the Court. *Cf. Eddy v. Colonial Life Ins. Co.*, 59 F.3d 201,

20  207-08 (D.C. Cir. 1995) (a fee award deters noncompliance with the law

21  and encourages settlement).

22      An inadequate award diminishes the inducement created by

23  fee-shifting statutes, and undermines the goal of promoting private

24  representation in consumer protection actions. In language which could

25  appropriately be applied to odometer fraud actions, the Second Circuit

26  noted:

1
2
3
4
5
6

> A Plaintiff who is successful in establishing certain practices as violative of his constitutional rights will deter officials from continuing this conduct, and thereby help assure that others are not subjected to similar constitutional deprivations. This deterrent effect of successful §1983 actions is wholly independent of the relief which the Plaintiff seeks or is ultimately awarded, and therefore it is inappropriate to condition attorney's fee awards on the nature of the relief granted.

7   *McCann v. Coughlin*, 698 F.2d 112, 129 (2d Cir. 1983).

8   A fee award should be made at a rate which recognizes the vindi-

9   cation of public policy expressed in the Odometer Act. "The award of

10  attorney's fees, as a practical matter, is a critical and integral part of

11  [the creation of a system of private attorneys general]." *James v. Home*

12  *Constr. Co.*, 689 F.2d 1357, 1359 (11th Cir. 1982).

13  **III.   Attorney's Fees Calculated Pursuant to the Lodestar Formula.**

14  The Ninth Circuit has determined that District courts must calcu-

15  late awards for attorney's fees using the "lodestar" method. *U.S. v.*

16  *$28,000.00 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015). The

17  "lodestar" figure is the number of hours reasonably expended multiplied

18  by an allowed hourly rate. *See Hensley v. Eckerhart*, 103 S.Ct. 1933,

19  1939 (1983) (viewing an award of fees under 42 U.S.C. §1988). The

20  burden is on the applicant to prove that the fee request is reasonable,

21  with a strong presumption that the lodestar amount represents a fair

22  and appropriate fee award.

23  Although *Hensley* was decided in the context of a civil rights case,

24  the lodestar analysis is applicable to all cases involving an attorney fee

25  shifting statute. *Hensley*, 103 S.Ct. at 1941. The Supreme Court has

26  previously noted that, "We have stated in the past that fee shifting

1  statutes' similar language is 'a strong indication' that they are to be

2  interpreted alike." *Independent Federation of Flight Attendants v. Zipes*,

3  491 U.S. 754, 109 S.Ct. 2732, 105 L.Ed. 2d 639 (1989) (quoting

4  *Northcross v. Memphis Bd. Of Education*, 412 U.S. 427, 428, 93 S.Ct.

5  2201, 2202, 37 L.Ed.2d 48 (1973).) *See* also *City of Burlington v. Dague*,

6  112 S.Ct. 2638, 2641 (1992) (clean water act case applying lodestar

7  analysis); *Simpson v. Sheahan*, 104 F.3d 998, (7th Cir. 1997) (civil rights

8  case); *DeJesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 234 (1st

9  Cir. 1990) (truth in lending case); *Piekarski v. Home Owners Savings

10  Bank, F.S.B.*, 755 F. Supp. 859, 863 (D. Minn 1991) (retaliatory dis-

11  charge case). The determination of the allowable hours rests with the

12  sound discretion of the trial court. *Hensley*, 103S.Ct. at 1941. Determi-

13  nation of the hourly rate by the trial court should consider a rate

14  "commensurate which [counsel] could obtain by taking other types of

15  cases." *Id.*

16  **IV.   Conclusion**.

17  Plaintiffs' respectfully request that the Court grant their motion

18  and award them their reasonable and necessary attorney's fees in the

19  amount of $21,422.50, which represents 45.1 hours of attorney time at

20  $475 per hour. Counsel has exercised reasonable billing discretion in

21  making this request and has reduced his recorded time by 9.9 hours, or

22  18%. The requested fees were reasonable and necessarily incurred in

23  representing Plaintiffs in this matter.

24  / / /

25  / / /

26

1

2      RESPECTFULLY SUBMITTED   May 28, 2021   .

3

4                                    s/ Floyd W. Bybee
                                Floyd W. Bybee, #012651
5                               **BYBEE LAW CENTER, PLC**
                                90 S. Kyrene Rd., Ste. 5
6                               Chandler, AZ 85226-4687
                                Office: (480) 756-8822
7                               Fax: (480) 302-4186
                                floyd@bybeelaw.com
8
                                Attorney for Plaintiffs
9

10

11     Copy of the forgoing sent by email and
       First Class Mail on **May 27, 2021** to:
12
       Ahmed Thahab
13     4036 W. Lane Avenue
       Phoenix, AZ 85051
14     (602) 832-6249
       thahabahmed@gmail.com
15     Defendant Pro Se

16     by    s/ Floyd W. Bybee

17

18

19

20

21

22

23

24

25

26